Terry SWANGER; Joan Swanger; Terry Swanger, as Parent and Next Friend of Jennifer Jo Swanger, a Minor; Terry Swanger, as Parent and Next Friend of Michael John Swanger, a Minor; Terry Swanger, as Parent and Next Friend of Chad Eric Swanger, a Minor, Appellants,

v.

STATE of Iowa, Appellee.

No. 88–693.

Supreme Court of Iowa.

Aug. 16, 1989.

Dennis R. Ringgenberg of Crary, Huff, Clem, Raby & Inkster, P.C., Sioux City, and John H. Hinderaker and Paul W. Heiring of Faegre & Benson, Bloomington, Minn., for appellants.

Michael R. Hellige of Shull, Cosgrove, Hellige, Kudej & Du Bray, Sioux City, and Thomas J. Miller, Atty. Gen., and John Perkins, Deputy Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and SNELL, JJ.

McGIVERIN, Chief Justice.

Terry Swanger was injured in an automobile collision involving a State-owned vehicle. Swanger, his wife, and their three children subsequently filed tort claims with the state appeal board.[1] Five months later, they withdrew their claims and filed a lawsuit in district court against the State. The district court found Swangers failed to comply with the six-month waiting period under the Iowa Tort Claims Act, Iowa Code chapter 25A,[2] and therefore dismissed their suit for lack of subject matter jurisdiction. Swangers appealed, contending: (1) that the State waived its governmental immunity and the requirements of Iowa Code chapter 25A by purchasing a liability insurance policy which stated the insurer would not assert the State's governmental immunity in defense of suits; and (2) that even if chapter 25A applied, they satisfied its requirements by submitting their claims to a private insurance adjuster more than six months before withdrawing them from the appeal board. Because we also believe Swangers failed to exhaust their administrative remedies under the Iowa Tort Claims Act, we affirm.

I. *Background facts and proceedings.* On October 17, 1983, a car driven by Terry Swanger collided with a car owned by the State of Iowa and driven by an employee of the Iowa Department of Transportation. All parties agree that the employee was acting in the course of her State employment at the time of the collision. Terry Swanger suffered serious injuries as a result of the collision.

At the time, the Department of Transportation was insured by a liability insurance policy issued by Employers Mutual Casualty Company. Shortly after the collision, the department reported the collision to Employers Mutual. Employers Mutual, in turn, hired Rick Molden, an independent

---

1. These claimants will be treated collectively herein and referred to as Swangers.

2. All references are to the 1983 Iowa Code unless otherwise stated.

insurance adjuster, to investigate the collision.

On October 28, Molden obtained a detailed written statement concerning the collision from Terry Swanger. On November 15, Molden entered into a property settlement with Terry and his wife for the damage to the Swanger automobile. None of Swangers' other claims were resolved at that time.

On February 7, 1984, Swangers filed tort claims with the state appeal board for Terry's personal injuries and his family's resulting loss of consortium. The next day, the appeal board wrote to Swangers to acknowledge receipt of the claims and specifically informed Swangers that if the claims were disapproved or not considered within six months from the date of their filing, then Swangers could bring suit on the claims in Iowa district court.

On July 11, Swangers sent a letter to the appeal board withdrawing their claims from its consideration. In their written notices of withdrawal, Swangers stated that six months had elapsed from the filing of their claims and, therefore, they were entitled to pursue their claims in district court. In fact, only approximately five months had elapsed from the filing of their claims with the appeal board. The appeal board withdrew Swangers' claims and acknowledged the same on July 16.

On July 18, Swangers filed suit in district court alleging negligence against the State.[3] In its answer, the State generally denied the material allegations of Swangers' petition and also asserted that Swangers were barred from any recovery because they had failed to exhaust the applicable administrative remedies provided by Iowa Code chapter 25A. Thereafter, the State moved to dismiss the suit, challenging the jurisdiction of the district court. Following a separate trial on the question, the district court found Swangers had failed to exhaust their administrative remedies and dismissed their suit for lack of subject matter jurisdiction.

Swangers appealed.

II. *Iowa Tort Claims Act, Iowa Code chapter 25A.* All parties agree that the Iowa Tort Claims Act, Iowa Code chapter 25A, governs this controversy.

Formerly, the doctrine of sovereign or governmental immunity deprived courts of jurisdiction over suits brought against the State sounding in tort. *Hubbard v. State,* 163 N.W.2d 904, 906 (Iowa 1969). In 1965, the general assembly abrogated, in part, this immunity by enacting the Iowa Tort Claims Act, Iowa Code chapter 25A. 1965 Iowa Acts ch. 79.

The preamble to the tort claims act provides:

> AN ACT to create and establish a state tort claims Act; defining terms and conferring upon the state appeal board on behalf of the state the power to determine certain claims against the state; permitting the state to be sued and waiving the state's immunity from liability to the extent provided herein; *conferring jurisdiction in the district court to hear, determine and render judgment; and generally providing for the practice and procedure to establish liability of the state on tort claims.*

*Id.* (emphasis added).

The State may now be sued in tort, but only in the manner and to the extent to which consent has been given by the legislature. *Hansen v. State,* 298 N.W.2d 263, 265 (Iowa 1980).

Under chapter 25A, "[a] tort claim against the State must, in the first instance, be presented for administrative consideration and disposition." *Weisbrod v. State,* 193 N.W.2d 125, 127 (Iowa 1971). Iowa Code section 25A.3 enables the state appeal board to conduct this administrative process and authorizes the appeal board "to consider, ascertain, adjust, compromise, settle, determine, and allow any claim as defined in this chapter."

Absent an administrative determination satisfactory to the claimant, Iowa Code section 25A.4 confers upon the claimant the

---

**3.** Thus, Swangers' suit was commenced only five months and eleven days after their claims had been filed with the appeal board on February 7, 1984.

right to bring an action at law. *Weisbrod,* 193 N.W.2d at 127. A section–25A.4 suit may not be brought, however, until the administrative remedy is exhausted. *Id.;* Iowa Code § 25A.5.

Iowa Code section 25A.5 governs as to when the State may be sued in tort and provides in part:

When suit permitted.

No suit shall be permitted under this chapter unless the state appeal board has made final disposition of the claim; except that if the state appeal board does not make final disposition of a claim within six months after the claim is made in writing to the state appeal board, the claimant may, by notice in writing, withdraw the claim from consideration of the state appeal board and begin suit under this chapter....

The remedies of chapter 25A are the exclusive remedies against the State for injuries caused by the negligent or wrongful acts of State employees acting within the scope of their employment. Iowa Code §§ 25A.16, 25A.2(5).

In light of the foregoing statutes, we have held that the state appeal board has primary or exclusive jurisdiction over tort claims against the State, and that the doctrine of exhaustion may be invoked where tort claimants have not properly submitted their claims to the board for consideration and disposition. *Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n,* 224 N.W.2d 639, 648 (Iowa 1974); *Cf. Reynolds v. United States,* 748 F.2d 291, 292 (5th Cir.1984) (holding under the analogous provision of the Federal Tort Claims Act that the federal district court lacked subject matter jurisdiction in action where the claimant filed suit in district court before exhausting her administrative remedies). Exhaustion of the administrative process is jurisdictional, and a suit commenced without complying with this process is subject to dismissal. *See, e.g., Brumage v. Woods-*

*mall,* 444 N.W.2d 68, 70 (Iowa 1989); Bennett, *Handling Tort Claims and Suits Against the State of Iowa: Part I,* 17 Drake L.Rev. 189, 192 (1968).

III. *Liability insurance and the Iowa Tort Claims Act.* In this case, the Iowa Department of Transportation exercised its authority under Iowa Code chapter 517A by procuring liability insurance for losses due to motor vehicle collisions.[4] Swangers contend that the existence of this insurance coverage, including a policy endorsement stating the insurer would not assert the State's governmental immunity defense, exempted their claims from compliance with the directives of chapter 25A; thus, Swangers claim they were not required to exhaust the available administrative remedies, and the district court had subject matter jurisdiction over their suit against the State.

■ Swangers rely on Iowa Code section 25A.20 which provides:

Whenever a claim or suit against the state is covered by liability insurance, the provisions of the liability insurance policy *on defense and settlement* shall be applicable notwithstanding any inconsistent provisions of this chapter. The attorney general and the state appeal board shall co-operate with the insurance company.

(Emphasis added.)

The State's automobile liability insurance policy provided that Employers Mutual would "pay all sums the insured legally must pay as damages ... to which this insurance applies...." The policy also contained the following endorsement:

At the request of the Insured, it is hereby agreed:

1. That the Company will not use, either in the adjustment of claims or in the defense of suits against the Insured the immunity of the Insured by reason of its governmental corporate nature from tort liability....

---

4. The State disputes whether the retrospective premium policy it purchased is truly "liability" insurance for purposes of Iowa Code section 25A.20. We will assume, without deciding, that

for the purposes of this appeal the coverage involved is liability coverage as contemplated under the statute.

A. *Iowa Code section 25A.20.* The central issue in Swangers' appeal involves construction of Iowa Code section 25A.20.

When construing a statute, we seek out the legislature's intent both from the language used and from the purpose for which the statute was enacted. *Cedar Memorial Park Cem. Ass'n v. Personnel Associates, Inc.*, 178 N.W.2d 343, 350 (Iowa 1970). "The ultimate object is to discover the real purpose and meaning of the act as a whole." *Id.*

Swangers contend that by the language of section 25A.20 (adopting the terms of the State's insurance policies as controlling on issues of "defense and settlement" of covered tort claims), the legislature went so far as to countenance the abrogation of chapter 25A in its entirety. According to Swangers, the doctrine of governmental immunity is a matter of "defense and settlement," and the provisions of chapter 25A, including the procedural requirements of section 25A.5, are part and parcel of the State's governmental immunity. Swangers argue that the State waived the defense of governmental immunity in its insurance policy. Therefore, the argument goes, Swangers were relieved of the burden of following the procedures of chapter 25A in their suit against the State. We are not persuaded that this was the legislature's intent in enacting chapter 25A.

■ Swangers' construction of section 25A.20 is not consistent with the provisions of chapter 25A as a whole.

First, if the legislature had intended to allow abrogation of chapter 25A in its entirety as to all insured claims, it would surely have said so explicitly. *Cf.* Iowa Code § 613A.7 (explicitly providing that whenever a municipality procures third-party liability insurance, that procurement constitutes a waiver of its governmental immunity to the extent of the policy).

Second, we do not believe that the procedural requirements of section 25A.5 can properly be characterized as matters of "defense and settlement" which could be superseded by the terms of the State's insurance policy under section 25A.20; rather, satisfaction of the requirements of

section 25A.5 is a condition precedent to the existence of a right to sue the State in the first place. Unless the plaintiffs have satisfied the requirements of section 25A.5, they simply may not avail themselves of the State's qualified waiver of governmental immunity from tort suit—regardless of the language of any insurance policy. Without exhaustion of those procedural requirements, there is no right to sue the State in tort; and there is no need for the State or its insurer to raise any defense whatsoever, for no court has jurisdiction over a tort suit against the State except that which is acquired pursuant to section 25A.5.

Third, we have often explained that with the advent of the Iowa Tort Claims Act, the State may be sued in tort, *but only in the manner and to the extent to which consent has been given by the legislature. See, e.g., Hansen v. State,* 298 N.W.2d 263, 265 (Iowa 1980). Swangers contend, nevertheless, that pursuant to section 25A.20 and by the terms of the insurance policy, the State waived the procedural requirements of section 25A.5. By Swangers' logic, this waiver would extend to the other provisions of chapter 25A as well, for like section 25A.5, these provisions protect the State only by virtue of its "governmental corporate nature," and therefore could not be asserted in defense of insured claims under the terms of the insurance policy. Thus, the State would be stripped of its protection from liability for prejudgment interest and punitive damages. *See* Iowa Code § 25A.4. Likewise, the numerous exceptions to state tort liability listed in section 25A.14 would be rendered meaningless.

Clearly, acceptance of Swangers' construction of section 25A.20 would drastically alter the extent of the waiver of State governmental immunity intended and accomplished by the legislature in chapter 25A. Yet the language of section 25A.20 says nothing about governmental immunity, and certainly does not provide a blanket waiver of governmental immunity. Neither does it purport to allow the terms of an insurance policy to enlarge the possible

tort liability of the State. Indeed, we have noted before that insurance "is for the purpose of protection against liability and not for the creation or increase of liability." *McGrath Bldg Co. v. City of Bettendorf,* 248 Iowa 1386, 1393, 85 N.W.2d 616, 621 (1957) (quoting *Cushman v. Grafton County,* 97 N.H. 32, 35, 79 A.2d 630, 632 (1951)). We do not believe that in enacting section 25A.20, the legislature intended to allow the terms of an insurance policy to upset its carefully crafted scheme dictating how, when and for what the State may be sued in tort.[5]

Reading the statutory scheme as a whole, we think the more reasonable and correct construction of the "defense and settlement" language in section 25A.20 is that by those terms, the legislature intended to authorize the State's insurers to adjust and settle claims against the State. Without section 25A.20, this function could only be performed by the state appeal board, subject to the advice and approval of the attorney general. *See* Iowa Code § 25A.3. In fact, any claim settled for more than five thousand dollars would also require court approval. *Id.* Section 25A.20 allows the State to avoid this routine but cumbersome procedure and is a recognition of the State's authority to procure liability insurance coverage for the negligent acts of its officers and employees. *See* Iowa Code ch. 517A. For liabilities covered by insurance, the legislature chose to rely on the insurer's internal claims process instead of the one otherwise mandated by section 25A.3.

B. *Independent Waiver.* Swangers also contend that by requesting the insurance policy endorsement at issue, the Department of Transportation unilaterally placed the State on equal footing with private litigants in all respects. In Swangers' view, this request worked a waiver of governmental immunity separate and indepen-dent from that provided by chapter 25A; this suit, therefore, is not a suit under chapter 25A and Swangers need not comply with the procedural requirements of chapter 25A. Swangers cite *Kersten Co., Inc. v. Department of Social Services,* 207 N.W.2d 117 (Iowa 1973), and *State v. Dvorak,* 261 N.W.2d 486 (Iowa 1978), as support for their position.

In *Kersten,* 207 N.W.2d at 122, we held that by entering into a contract, the State waived its governmental immunity and consented to suit for breach of the agreement. In *Dvorak,* 261 N.W.2d at 489, we held that by becoming a landowner, the State waived its governmental immunity and consented to the limited jurisdiction of the township fence viewers under Iowa Code chapter 113. But neither *Kersten* nor *Dvorak* involved the State's immunity from suit in a field of law occupied by comprehensive legislation like the Iowa Tort Claims Act. Moreover, the Iowa Tort Claims Act unequivocally states that its remedies are the *exclusive remedies* against the State for injuries caused by the negligent or wrongful acts of state employees acting within the scope of their employment. *See* Iowa Code §§ 25A.16, 25A.2(5). Simply stated, the Iowa Tort Claims Act sets the metes and bounds of the State's liability in tort. *Kersten* and *Dvorak* are not on point.

■ We conclude that section 25A.20 does not allow the terms of the State's insurance policy to supersede the administrative process or increase the district court's limited jurisdiction over tort claims against the State. As the district court stated, "the policy did not and could not waive the jurisdictional requirements of section 25A.5." In order to sue the State of Iowa in tort, it is necessary, as a jurisdictional prerequisite, to exhaust the administrative remedies available under chap-

---

5. We also think it significant that the legislature contemplated that the state appeal board might not act on every claim submitted to it and provided for that event. Thus, a claimant may sue the State in tort if no disposition of his claim is made within six months. Iowa Code § 25A.5. Moreover, section 25A.13 allows such a claimant an additional six months in which suit may be filed in district court, even though the statute of limitations for a tort suit would have otherwise expired. We decline Swangers' invitation to judicially circumvent the appeal board in cases where an insurance adjuster is primarily responsible for investigation of the tort claim.

ter 25A before resorting to the district court.

This conclusion is consistent with the language of the insurance policy and the nature of liability insurance in general. As is standard for liability insurance contracts, the insurer agreed to pay, up to the policy limits, "all sums the insured legally must pay as damages ... to which this insurance applies...." Thus, the policy contemplates that the determination of the State's liability to a claimant is separate from the determination of whether established liability to a given claimant is covered under the policy.

■ Contrary to Swangers' contention, the State and Employers Mutual clearly did not intend, by entering into this insurance contract, to convert cases of nonliability into cases of liability. Rather, Employers Mutual agreed to pay liabilities the State incurred for torts of its employees—liabilities that could only arise under chapter 25A in the first place. Accordingly, the endorsement in which Employers Mutual promised not to assert the State's governmental immunity must have been intended merely to clarify that if the State was, in fact, deemed liable to a claimant by the appeal board or a court after the claimant had complied with the procedural requirements of chapter 25A, then the insurer would not be heard to raise the defense of governmental immunity to avoid paying the valid state tort claim. Under this reading of the policy, the State purchased liability insurance to protect itself *in the event* it incurred liability under chapter 25A; acceptance of Swangers' position would mean that the State, not otherwise liable, would be held liable *because* it purchased liability insurance.

IV. *Initiating a claim under the Iowa Tort Claims Act.* Alternatively, Swangers contend that Rick Molden, the independent insurance adjuster retained by Employers Mutual who took Terry Swanger's statement on October 28, 1983, was authorized to "receive" claims on behalf of the state

appeal board for the purposes of Iowa Code section 25A.3 as a matter of law. Swangers argue that because they presented their claims to Molden on October 28, 1983, their withdrawal of the claims from the appeal board on July 16, 1984, more than six months later, was not premature for the purposes of Iowa Code section 25A.5. The trial court, however, found as a fact that Molden was not an agent of the appeal board for the purpose of receiving claims. Substantial evidence and the law support that finding.

■ Iowa Code section 25A.5 provides that the state appeal board has exclusive jurisdiction over any tort claim against the State until "six months after the claim is *made* in writing to the state appeal board." (Emphasis added.) We recently considered the word "made" as it is used in Iowa Code section 25A.13, the limitations provision of the tort claims act. In *McGruder v. State,* 420 N.W.2d 425, 426 (Iowa 1988), we concluded that "made" under section 25A.13 was synonymous with "filed," and that even though the claim was timely mailed in that action, it was nevertheless barred because the claim was not filed until after the limitations period had run.

Iowa Code section 25A.3 (1983) states, "Claims made under this chapter shall be *filed* with the state comptroller, who shall acknowledge receipt on behalf of the state appeal board." [6] (Emphasis added.) Section 25A.3 further empowers the appeal board to adopt rules and procedures for handling and processing claims. Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims. *See* 543 Iowa Admin.Code 1.3, 1.4. Tort claims before the appeal board, for example, must be verified and signed by the claimant, filed with the department of management at Des Moines, and must describe the accident, injuries and claims in detail. *Id.*

There exists no authority, by either rule, statute or judicial opinion, which supports Swangers' contention under the Iowa Tort Claims Act. Following our reasoning in

---

**6.** Iowa Code section 25A.3 (1989) now provides that tort claims against the State shall be filed with the director of management.

*McGruder,* we conclude that tort claims are "made" for the purposes of section 25A.5 when the prescribed forms are properly filed with the director of management. This conclusion is dictated by the statutory language, a fact acknowledged in Swangers' written notices of withdrawal, dated July 11, 1984, which stated that their claims were filed February 7, 1984.

█ We agree with the trial court and conclude that Swangers' communications to the independent insurance adjuster, who could not "receive" claims for the state appeal board, were not adequate to commence the six-month administrative period prescribed in Iowa Code section 25A.5.

V. *Disposition.* The Iowa Tort Claims Act provides the exclusive means through which tort claimants may pursue claims to suit against the State. Under the act, the state appeal board has exclusive jurisdiction over state tort claims for six months following the date when the claims are properly made before the board. This administrative process must be exhausted before the district court can obtain jurisdiction over tort suits against the State. Because Swangers failed to exhaust their administrative remedies before the state appeal board, the district court was without jurisdiction over their action at law. Therefore, the district court properly dismissed Swangers' petition. The ruling of the district court is affirmed.

AFFIRMED.